OPINION
{¶ 1} Defendant-appellant, William Redwine, Jr., appeals his conviction and sentence in the Brown County Court of Common Pleas for felonious assault.
 {¶ 2} Appellant was indicted in July 2004 on one count of felonious assault in violation of R.C. 2903.11(A)(1). The state alleged that on the evening of June 1, 2004, Mark Spicer was the victim of a severe, unprovoked attack by appellant, his neighbor. At the time, both men lived on Eubanks Road, in Perry Township, Brown County, Ohio. The matter was tried to a jury in June 2006. At trial, the parties' testimony as to what happened that evening was *Page 2 
 {¶ 3} Eubanks Road runs from State Route 251 to Anderson Road. The middle part of Eubanks Road goes through woods, is not maintained, and is impassable by car (although it is passable by a four-wheeler). Traveling from S.R. 251, the unimproved and impassable portion of Eubanks Road starts at the end of a turnaround, which is located past appellant's driveway. Over the years, a series of confrontations erupted between appellant and people living on Eubanks Road as to their use of Eubanks Road past appellant's driveway. Then, on June 1, 2004, appellant assaulted Spicer.
 {¶ 4} That evening, Spicer left his house on a golf cart and went looking for his dog on Eubanks Road. Spicer was driving back from the turnaround when he noticed appellant with a spotlight flickering toward him. Spicer stopped to see what appellant wanted. Appellant immediately got into his face and repeatedly stated: "If you come back here one more time, I'm gonna kill you." Words were exchanged between the two men. Then, as Spicer testified, "the next thing I knew this real powerful stoplight was in my eyes, [and] I was hit across here with something. It pretty much knocked me unconscious. * * * I felt I was getting kicked in the head. After that point, I was totally unconscious. When I woke up, I was lying face down in the ditch. I was in severe pain, bleeding all over." Spicer managed to drive back to his house where his wife called the police and 911. Spicer was taken to a hospital and was released several hours later. Spicer suffered several injuries, including a broken nose.
 {¶ 5} According to appellant, he was walking in a field on his property that evening when he noticed headlights. As it looked like a four-wheeler on a joy ride on his property, appellant flicked his spotlight in the direction of the vehicle. As the vehicle approached, appellant recognized Spicer who stated: "damn you, Redwine." Spicer then revved up his vehicle and began driving rapidly in the direction of appellant. As appellant jumped out of the way, he fell to his knees and dropped his spotlight. By the time appellant got back up, Spicer *Page 3 
was in his face, yelling. As Spicer started swinging at him, appellant swung back and hit Spicer several times. Spicer fell to the ground. Appellant began running toward his house, with Spicer following behind. When appellant's motion detector light went off, Spicer turned around, got back on his vehicle, and drove away. Because Spicer was able to drive away after being hit, appellant did not think he had hurt Spicer badly and subsequently lied to the police who came to investigate.
 {¶ 6} On June 16, 2006, the jury found appellant guilty of felonious assault. Appellant was subsequently sentenced to five years in prison. Appellant now appeals, raising three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ALLOWED EXTENSIVE TESTIMONY AND EXHIBITS REGARDING THE BOUNDARY LINES OF THE DEFENDANT'S PROPERTY."
 {¶ 9} In this assignment of error, appellant generally argues that the trial court abused its discretion by allowing evidence as to the history and legal status of Eubanks Road, and in particular the portion of the road alongside appellant's property and past his driveway. At trial, Spicer claimed he was attacked by appellant immediately after using Eubanks Road past appellant's driveway, as he and other neighbors had done before. By contrast, appellant claimed he was attacked by Spicer on his own property without any reason or confrontation. At trial, several relatives of Spicer and another witness testified as to verbal confrontations with appellant and appellant's threats to them, while at times armed with a shotgun, for simply using Eubanks Road near or past appellant's driveway. By contrast, a number of witnesses for appellant corroborated appellant's claim of being harassed and threatened by his neighbors.
 {¶ 10} Evidence of the history and legal status of Eubanks Road came in through two *Page 4 
witnesses, David Brinkman, a Perry Township Trustee, and appellant. While appellant's attorney objected to Brinkman's testimony and the state's exhibits dealing with the history and status of Eubanks Road, there were no objections during appellant's cross-examination regarding the history of the road and appellant's belief as to the status of the road.
 {¶ 11} David Brinkman testified that traveling from S.R. 251, Eubanks Road dead ends at the turnaround, right before the middle, impassable portion of the road, and that the turnaround was built for school buses. Brinkman also testified that a map of the township in a 1876 Atlas shows that Eubanks Road existed in 1876; when he became a trustee in 1986, the road was drivable all the way to where the turnaround is; beginning in 1986, the township started improving the road; the road is carried on the state registry as a public road with the numeric designation T108; and the road has never been vacated despite a 1986 petition to vacate the middle, unimproved portion of Eubanks Road.
 {¶ 12} Brinkman further testified that appellant has complained to the trustees that the portion of the road running from his driveway to the turnaround is not a public road but his personal road; on a few occasions, appellant blocked part of the road which prompted a lawsuit from the state; the township took action to remove the items used by appellant to block the road; as a result, appellant eventually filed a lawsuit against the township, which was pending at the time of appellant's trial; over the years, the township has received complaints from people living on Eubanks Road regarding appellant's claiming ownership and blocking up part of the road; allowing appellant to block part of the road would prevent anyone from using the turnaround and would landlock some property owners; and in April 1986, appellant and other people signed a petition to widen, gravel, and improve the road.
 {¶ 13} Appellant testified on direct examination that when he bought his 35-acre property in 1980-1981, there was no road going to his property (he was the first one to buy land) or to the middle, unimproved portion of Eubanks Road; over the years, he personally *Page 5 
dug drainage ditches and put several catch basins to build a road to his property; he bought that particular property because it was at the end of the road and very private; however, over the years, problems occurred with four-wheelers and hunters at the end of the road (where the turnaround is now located) and people trespassing on his property; as a result, he sent letters to the township trustees and went to township meetings to express his concerns about his property and explain his position and the history and status of the road; he spent about 300 hours researching the road issue and $80,000 on litigation; when his efforts at resolving the road issue were unsuccessful, he blocked the portion of the road through his property (that is, past his driveway); the blockades did not affect the rest of the road; he had no intention to limit people's access to the road up to his property and was only concerned about the roadway through his property; and he had no intention to prevent school buses or garbage trucks to turn around and in fact allowed garbage trucks to turn around on his property.
 {¶ 14} On cross-examination, appellant testified that the southern part of a road formerly called Jeptha-Sullivan Road became at some point Eubanks Road; there is a distinction between the dedicated portion of Eubanks Road (which ends in Anderson Road) and "the portion [of Eubanks Road] coming off of [S.R.] 251, the undedicated portion;" in fact, the roadway "from [S.R.] 251 all the way through [his] property is not dedicated" and there has never been an official creation of the road; according to the county engineer, Eubanks Road has been on the ODOT(Ohio Department of Transportation) records since 1988; in reply to an inquiry from appellant's attorney, ODOT indicated in 2000 that it has carried T108 (aka Eubanks Road) in their inventory since 1951 "at which time it was added as an impassable road;" despite what he was told by various state and county officials, appellant does not believe that the portion of Eubanks Road alongside his property and past his driveway is a public road; and closing the portion of the road past his driveway would not landlock property owners as they could access their property from the "dedicated portion" of Eubanks Road *Page 6 
which runs from Anderson Road.
 {¶ 15} Appellant first argues that the trial court abused its discretion when it allowed the foregoing evidence as to the history and legal status of Eubanks Road. Appellant argues that because the issue at trial was who was the initial aggressor, and not where the assault took place, the foregoing evidence was irrelevant and thus inadmissible. According to appellant, although his subjective belief as to whether or not he owned Eubanks Road or part of it "may have been relevant as to his state of mind [as to] whether Spicer and his various relatives had continually trespassed on his property," the legal status of the road had no bearing whatsoever on the issues in this case. "The precise location of the incident had nothing to do with the incident itself."
 {¶ 16} It is well-established that the decision to admit or exclude evidence lies within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, 180. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129-130. A reviewing court may not override a trial court's determination that a particular item of evidence is relevant or irrelevant simply because it disagrees with the trial court. Id. at ¶ 129. "The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." Id.
 {¶ 17} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The Ohio Supreme Court has defined relevancy as "any matter of fact, the effect, tendency, or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact — a persuasion either affirmative or disaffirmative of its existence." Barnett v. *Page 7 State (1922), 104 Ohio St. 298, 306. Evidence which is not relevant is inadmissible. Evid.R. 402. Although it is not expressly indicated on its face, Evid.R. 401is applied by the trial judge in a highly discretionary manner. Weissenberger's Ohio Evidence Treatise (2007) 88, Section 401-3.
 {¶ 18} Upon reviewing the foregoing testimony of Brinkman and appellant in the overall context of the trial, and not simply individually, we find that the evidence regarding the history and legal status of Eubanks Road, while maybe unnecessarily extensive, was nonetheless relevant. As a result, the trial court did not abuse its discretion when it allowed such evidence.
 {¶ 19} The jury was presented with two very different versions of the assault. Appellant claimed he was attacked by Spicer while walking in a field on his property, and as a result, struck Spicer back in self-defense. If appellant and his witnesses were to be believed, Spicer and his relatives living on Eubanks Road went out of their way to provoke and threaten appellant, and to intimidate his family and friends. By contrast, Spicer claimed he was attacked by appellant on Eubanks Road immediately after using the portion of Eubanks Road past appellant's driveway. If Spicer and his witnesses were to be believed, the tense history between appellant and Spicer (and the other neighbors), which initially involved verbal altercations and then the 2004 assault, stemmed from the very fact that appellant believed that the portion of Eubanks Road alongside his property and past his driveway was on his property and thus, was his personal roadway, not a public road. The road evidence gave the jury an explanation of the history of the road as a background to the neighborhood tension, and showed appellant's obsession with the roadway and his escalating aggression to perceived trespassers. Thus, while appellant's subjective belief as to whether or not he owned Eubanks Road or part of it was relevant as to his state of mind as to whether Spicer and his various relatives had continually trespassed on his property, the road evidence also had bearing on the issues in the case at bar and was relevant. *Page 8 
 {¶ 20} Appellant also argues that even if the evidence as to the legal status of the road was relevant, it should have been excluded because by allowing such evidence, the trial court essentially asked the jury to decide the legal status of the road, which is also the issue in a pending civil action between the township and appellant. At the time of the trial, the civil action between the township and appellant was already pending and was briefly referred to. Appellant asserts that by allowing this evidence, the trial court misled the jury and allowed it to be confused as to its proper function in this case.
 {¶ 21} Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Confusing evidence may be properly excluded under Evid.R. 403(A) "where its admission [would] have such a misleading effect, that the jury's decision-making process [would] be adversely affected. [T]he danger must `substantially' outweigh the probative value, and the mere possibility of danger will not be a basis for exclusion of evidence under [Evid.R.] 403. Exclusion based upon confusion usually is justified where the offered evidence would require the trier of fact to engage in intricate, extraordinary or impossible mental gymnastics in order to comprehend the import of the evidence or to assess its weight." Weissenberger's Ohio Evidence Treatise (2007) 122, Section 403-5.
 {¶ 22} Upon thoroughly reviewing the record in light of the issues at trial, we find that the trial court did not err by refusing to exclude the evidence regarding the history and legal status of Eubanks Road. Only two of 21 witnesses testified as to the history and legal status of the road (Brinkman and appellant), and their combined testimony on the issue only spanned about 70 of 650 pages. Contrary to appellant's assertion, the jury was not asked or required to decide the legal status of the road. Evidence of the history and legal status of the road did not require the jury to engage in intricate, extraordinary or impossible mental *Page 9 
gymnastics in order to comprehend the import of the evidence or to assess its weight. There is no evidence the jury was confused as to its proper function.
 {¶ 23} In light of all of the foregoing, we find that the trial court did not abuse its discretion by allowing evidence as to the history and legal status of Eubanks Road. Appellant's first assignment of error is accordingly overruled.
 {¶ 24} Assignment of Error No. 2:
 {¶ 25} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONCLUSION THAT [APPELLANT] HAD CAUSED SERIOUS PHYSICAL HARM TO [THE VICTIM]."
 {¶ 26} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d 89, 113,1997-Ohio-355. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 27} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1), which states: "No person shall knowingly cause serious physical harm to another * * *." R.C. 2901.01(A) defines "serious physical harm" in relevant part as "any physical harm" that "involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity"; that "involves some permanent disfigurement or that involves some temporary, serious disfigurement;" or that "involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c)-(e).
 {¶ 28} Appellant contends that since Spicer was never admitted to the hospital for treatment, only received three stitches to his face, and sustained no broken jaw, missing *Page 10 
teeth, or concussions, Spicer did not suffer serious physical harm under R.C. 2901.01(A)(5). We disagree.
 {¶ 29} The testimony of Spicer and two physicians, medical records, and photographs showed that Spicer sustained a broken nose for which he eventually received surgery, two swollen black eyes, a small laceration on the forehead which required stitches, and contusions to the head, neck, and left shoulder. Spicer testified that the bruises and skin discoloration lasted well past a year. While the two physicians testified it would be unlikely or improbable for bruises to last over a year, they also both testified that bruises do last several days. The physician testifying on behalf of appellant further testified that the life span of the type of bruises on Spicer was "several weeks to a few months."
 {¶ 30} Spicer also testified that following the assault, he had severe headaches, he was in severe pain, and that he took pain medication on a daily basis for six to eight weeks. The physician who examined him in the emergency room ("E.R.") at the hospital testified that Spicer was in a great amount of pain at the hospital. The E.R. physician further testified that in light of his injuries, Spicer probably had pain for days to weeks afterwards, was probably unable to work for a period of days, and was definitely not up to his full form for a matter of days to weeks. Spicer testified that he returned to work three weeks after the assault because he felt he had no choice.
 {¶ 31} The E.R. physician also testified that although there was no evidence of intracranial injury, Spicer had a bruise behind his ear, commonly known as the battle sign (also known as a basilar skull fracture). The physician explained that "people would be hit on the head and subsequent bleeding back there [sic]. And that's often indicative of a fracture to the skull. Now, the CAT scan didn't show any fracture, but often times there could be a small hairline fracture which can cause that bleeding back there, which won't necessarily show up on the x-ray, just because it's too fine." The physician admitted his report did not state *Page 11 
anything about a possible cracked skull.
 {¶ 32} Finally, Spicer also testified that he lost consciousness during the assault. Losing consciousness as a result of an assault constitutes serious physical harm. See State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, ¶ 15; State v. Czajka (1995),101 Ohio App.3d 564, 574 (being choked to the point of unconsciousness constitutes serious physical harm because it causes the victim to be in a state of temporary, substantial incapacity under R.C. 2901.01[A][5][c]).
 {¶ 33} In light of the foregoing, we find that there was sufficient evidence that appellant caused serious physical harm to Spicer under R.C. 2901.01(A)(5). Appellant's second assignment of error is overruled.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT SENTENCED HIM TO FIVE YEARS IN PRISON."
 {¶ 36} Appellant was convicted of felonious assault, a felony of the second degree. The sentencing range for a second-degree felony is a prison term of two to eight years. R.C. 2929.14(A)(2). Appellant argues that given the fact that Spicer did not suffer any permanent injuries; at the sentencing hearing, appellant personally apologized for the physical pain and mental anguish he caused Spicer and his family; appellant's criminal record only consisted of a very old drunk driving conviction and a 2002 no contest plea to menacing for which he was placed on probation for two years; and the remote possibility of recidivism, especially since appellant and his wife no longer live on Eubanks Road, the trial court erred in sentencing him to five years in prison.
 {¶ 37} "[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." State v. Foster, *Page 12 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 100. Sentencing courts must now consider the provisions listed in R.C. 2929.11 and 2929.12 as statutory factors to determine an appropriate felony sentence. State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. R.C. 2929.11 specifies the purposes of sentencing, while R.C. 2929.12 provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.
 {¶ 38} At the sentencing hearing, the trial court received numerous letters, both for and against appellant; Spicer talked about the physical and emotional pain he suffered as a result of the assault; and appellant's wife, appellant's mother, and a pastor spoke on behalf of appellant. While appellant apologized for the pain and mental anguish he caused Spicer and his family, the trial court found appellant's remorse to be less than genuine. The trial court noted that in the presentence investigation report ("PSI") which was compiled after the jury verdict, appellant stated: "I do feel I am the victim in this." While a trial court may consider an offender's statement of remorse, the court is not required to accept the statement as true and may comment accordingly.State v. Cockrell, Fayette App. No. CA2006-05-020, 2007-Ohio-1372, ¶ 28.
 {¶ 39} With regard to Spicer's physical injuries, while they may not have been permanent, they were nonetheless serious. In addition, Spicer testified how the fact he was knocked unconscious, beaten while unconscious, and left lying in a ditch was traumatic and "very painful and very hard" for him, his wife, and their son. Spicer told the court: "We have a very hard time dealing with that not only physically, but also emotionally. I don't know if I ever will get over it or not, to be honest with you."
 {¶ 40} Finally, while appellant's criminal record was not extensive, the record shows that with regard to the 2002 no contest plea, (1) appellant was originally charged with aggravated menacing, (2) the charge stemmed from an incident arising out of Eubanks Road issues in which appellant threatened a county employee, and (3) appellant assaulted Spicer *Page 13 
only a few weeks after he was no longer on probation for his menacing conviction.
 {¶ 41} In light of the foregoing, and given that the trial court imposed a sentence within the statutory range, and considered the appropriate statutory guidelines, along with the PSI and mitigating evidence, we find that the trial court did not err by sentencing appellant to five years in prison. Appellant's third assignment of error is overruled.
 {¶ 42} Judgment affirmed.
 BRESSLER and WALSH, JJ., concur. *Page 1