OPINION
{¶ 1} Defendant-appellant, Stephanie Rodriguez, appeals her conviction in the Butler County Court of Common Pleas on one third-degree felony count of perjury, in violation of R.C. 2921.11. For the reasons set forth below, we affirm the trial court's judgment.
 {¶ 2} This matter concerns appellant's application for a civil protection order against Stephen Suttle, the father of appellant's 12-year-old daughter. On October 30, 2006, *Page 2 
appellant petitioned the domestic relations court for such order after her daughter alleged she was being abused by Suttle. The child has resided with Suttle on a permanent basis since she was seven years old, following her removal from appellant's custody and adjudication as a neglected child. Suttle was awarded legal custody of the child in 2004, at which time appellant was ordered to pay child support and was not awarded any visitation with the child. In the summer of 2006, however, Suttle permitted appellant occasional supervised visitation with the child, and thereafter permitted appellant one unsupervised overnight visit. Suttle cancelled a second unsupervised overnight visit that was scheduled for October 27, 2006.
 {¶ 3} When appellant arrived at the domestic relations court to apply for the civil protection order, she was provided with a number of documents to complete, including a civil protection order petition and parenting affidavit. Appellant was placed in a private room and instructed to complete the documents. After completing such documents without the assistance of an attorney or court staff member, appellant gave the documents to a court staff member, raised her right hand, and attested to the truthfulness of the information provided therein. The documents were then notarized, and the matter proceeded to a hearing.
 {¶ 4} At the conclusion of the hearing, the domestic relations court judge granted an ex parte civil protection order, and appellant's daughter was immediately removed from Suttle's custody for a period of two weeks. The child was thereafter returned to Suttle following a final hearing on the matter, during which it became apparent that a previous custody case was pending in the juvenile court, prompting the domestic relations court to transfer the case to the juvenile court.
 {¶ 5} On May 9, 2007, appellant was charged with one third-degree felony count of perjury, in violation of R.C. 2921.11, on the basis she allegedly provided false statements on her petition for the civil protection order. Following a jury trial on August 2, 2007, appellant *Page 3 
was found guilty of the offense, and was subsequently sentenced to three years in prison, along with a $5,000 fine.
 {¶ 6} Appellant now appeals her conviction, advancing three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONVICTION FOR PERJURY[.]"
 {¶ 9} In her first assignment of error, appellant argues her conviction is not supported by sufficient evidence. Specifically, appellant contends the state failed to prove she knowingly made a material false statement on the petition for a civil protection order or parenting affidavit. We find appellant's argument without merit.
 {¶ 10} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 33. In reviewing the record for sufficiency, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" Id., quoting State v. Haney, Clermont App. No. CA2005-07-068,2006-Ohio-3899, ¶ 14; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Further, in considering the sufficiency of the evidence, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781; State v. White, Franklin App. No. 06AP-607,2007-Ohio-3217, ¶ 26. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. State v.Benge, 75 Ohio St.3d 136, 143, 1996-Ohio-227. *Page 4 
 {¶ 11} R.C. 2921.11(A) provides that "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." "A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed a falsification to be immaterial." R.C. 2921.11(B).
 {¶ 12} The statements alleged to be false in this case include appellant's responses to questions six, seven and nine on the parenting affidavit. Question six provides, "[d]o you know of any litigation anywhere, past or present, which concerns the custody, visitation, or care of the child(ren)?" Question seven provides, "[i]f the answer to #6 is "yes", state any other information you have about any parenting proceeding concerning the child(ren) now pending in this or any other state. Include the case number, the name of the court, and the address of the court." Finally, question nine provides, "[a]re you now, or have you ever been, a party to any civil or criminal case or any investigation concerning child abuse, child neglect, or domestic violence? If so, state each court, case name, case number, date, type of case and result of the case." Appellant did not provide a response to question six. In response to question seven, appellant stated, "[n]o pending cases." Appellant responded, "[n]o," to question nine.
 {¶ 13} During appellant's trial, Suttle testified on behalf of the state concerning the custody of his daughter. Suttle testified that he was awarded sole custody of the child in 2004 after the child was adjudicated neglected by appellant. He also indicated that appellant was awarded no visitation at the dispositional hearing, and was ordered to pay child support on behalf of the child. Significantly, Suttle testified that at the time appellant filed her petition for a civil protection order, contempt motions for nonpayment of child support were pending and future hearings were scheduled. *Page 5 
 {¶ 14} The state also presented the testimony of attorney, Francis Sweeny, who served as guardian ad litem of appellant's daughter during the abuse, neglect and dependency proceedings in 2002. Sweeny indicated that appellant's daughter, along with two of appellant's other children, were ultimately adjudicated neglected by appellant, as well as dependent. He also testified that Suttle was later granted sole custody of his daughter in 2004, and that appellant was awarded no visitation with the child at that time.
 {¶ 15} Domestic relations court receptionist, Tracy Gotherman, testified at trial concerning the procedure for applying for a civil protection order. She indicated that a petitioner is provided with a packet of documents to complete, along with instructions, and is placed in a private room to complete the documents without court assistance. Such documents are then returned to her and notarized after the petitioner attests to the truthfulness of the information provided. Gotherman testified that she notarized appellant's petition and parenting affidavit on the date in question in this case, after appellant raised her right hand and attested to the truthfulness of the information provided in such documents. Notably, Gotherman also testified that when she initially provided appellant with the documents to complete, she instructed appellant to disclose any criminal or other cases that might pertain to the order.
 {¶ 16} Finally, the state introduced the video deposition of domestic relations court judge, Eva Kessler, who presided over the ex parte hearing concerning appellant's petition for a civil protection order. Judge Kessler indicated that it is very important that a petitioner is truthful in completing the petition and affidavit, due to the ex parte nature of the proceedings during which the other party is not present or able to respond to allegations. Judge Kessler indicated that she relied upon appellant's parenting affidavit in granting the ex parte order in this case, and would have asked appellant additional questions during the hearing had appellant disclosed to her the information at issue. She further testified that had she been *Page 6 
aware there was a pending court order in juvenile court, she would have contacted the juvenile court and asked for a copy of its orders before granting the ex parte order.
 {¶ 17} Appellant testified on her own behalf at trial concerning the information she provided in her petition and affidavit, and maintained that she did not understand the questions asked therein. With respect to her response to questions six and seven concerning her knowledge of any cases involving the custody, visitation, or care of her daughter, appellant acknowledged that an open child support case was pending at the time she completed the document, and that there was a "closed" juvenile case. She further testified that a domestic relations court staff member asked her about any pending child support cases when she handed her the documents to complete. Appellant testified that she told the staff member there was an open support case, but maintained that the documents in question did not ask for such information. Appellant testified that she answered, "[n]o pending cases," to question seven because "there was no pending case besides child support."
 {¶ 18} With respect to her response to question nine concerning her involvement in any child abuse, child neglect, or domestic violence cases, appellant testified that she was incarcerated in 2002 and did not attend the hearing at which her daughter was adjudicated neglected and dependent. She also testified that she did not know her daughter was adjudicated neglected, and therefore, responded, "[n]o," to question nine. Appellant acknowledged, however, that she retained an attorney for the dispositional portion of the abuse, neglect and dependency proceedings, and attended "every hearing after [she] got out of prison." She also acknowledged that Suttle was granted sole custody following the dispositional hearing, and that she was awarded no visitation with her daughter at that time. Notably, Paul Becker, appellant's attorney during the dispositional proceedings, also testified at trial, indicating that he spoke with appellant about the original adjudication hearing during *Page 7 
which she was found to have neglected her children, and that he explained to her what "neglect" meant.
 {¶ 19} Finally, appellant acknowledged at trial that she had previously been arrested and charged with domestic violence in 1998, but testified that she "wasn't thinking about" the matter when she completed the documents in question. Appellant acknowledged responding "[n]o," to question nine concerning her involvement in prior domestic violence cases.
 {¶ 20} While appellant argues she did not "knowingly" provide false information on the documents in question, we find the foregoing evidence was sufficient to support a finding that appellant knowingly made a false statement, under oath, on the parenting affidavit. The jury, as the trier of fact, was in a better position to determine the credibility of the witnesses and the weight to be given the evidence, including appellant's contention that she did not understand the questions at issue. In addition, we find Judge Kessler's testimony was sufficient to support a finding that such false statements were material, as Judge Kessler testified she relied upon appellant's statements in granting the civil protection order, and would have asked further questions had appellant disclosed the information at issue. See State v. Bell (1994),97 Ohio App.3d 576, 579-581. Accordingly, after a thorough review of the record, we find the state presented sufficient evidence such that a reasonable juror could find appellant guilty of perjury beyond a reasonable doubt. Appellant's first assignment of error is therefore overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE CONVICTION OF DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} In her second assignment of error, appellant argues her conviction for perjury is against the manifest weight of the evidence. We find this contention without merit.
 {¶ 24} While the test for sufficiency requires a determination as to whether the state *Page 8 
has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. Wilson, 2007-Ohio-2298 at ¶ 34. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 25} In such a review, an appellate court considers the credibility of the witnesses and the weight to be given the evidence. State v.Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As stated, "[h]owever, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence presented." Id., citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. Id. at ¶ 25, citing State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 26} As previously discussed, the record in this case demonstrates that appellant responded, "[n]o pending cases," to question seven on the parenting affidavit, which requested information concerning appellant's knowledge of cases involving the custody, visitation or care of the child. The state, however, presented evidence demonstrating that a child support matter was pending at the time, a fact appellant acknowledged during her own testimony at trial. Moreover, the record demonstrates that appellant responded, "[n]o," to question nine concerning whether she has been involved in any child neglect or domestic *Page 9 
violence cases. The state, however, presented evidence that appellant's daughter was adjudicated neglected in 2002, and appellant admitted during her own testimony that she had previously been arrested in 1998 for a domestic violence matter involving her ex-husband.
 {¶ 27} After reviewing the record, we find appellant's conviction is not against the manifest weight of the evidence. Based upon the evidence presented at trial, we cannot say the jury clearly lost its way or created a manifest miscarriage of justice in finding appellant guilty of perjury such that appellant's conviction must be reversed and a new trial ordered. Appellant's second assignment of error is overruled accordingly.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO ALLOW HIM [SIC] TO PRESENT EVIDENCE THAT THE DOMESTIC RELATIONS COURT TOOK REMEDIAL MEASURES AND CHANGED THE FORMS TO BE FILLED OUT FOR DOMESTIC VIOLENCE CIVIL PROTECTION ORDERS."
 {¶ 30} In her final assignment of error, appellant argues the trial court erred in denying her request to admit evidence concerning the domestic relations court's revisions to the documents a petitioner must complete to obtain a domestic violence civil protection order. We find appellant's argument as to this matter without merit.
 {¶ 31} The decision to admit or exclude evidence is a matter committed to the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180; State v. Redwine, Brown App. No. CA2006-08-011,2007-Ohio-6413, ¶ 16. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129-130. A reviewing court may not override a trial court's determination that certain evidence is relevant or irrelevant simply because it disagrees with the trial court.Redwine, citing *Page 10 Hancock at ¶ 129. "The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." Id., quoting Renfro v. Black
(1990), 52 Ohio St.3d 27, 31.
 {¶ 32} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. The Ohio Supreme Court has defined relevancy as "[a]ny matter of fact, the effect, tendency, or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact-a persuasion either affirmative or disaffirmative of its existence." Barnett v. State (1922),104 Ohio St. 298, 306. Evidence that is not relevant is inadmissible. Evid. R. 402.
 {¶ 33} Evid. R. 403(A) further provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Confusing evidence may be properly excluded under Evid. R. 403(A) "`where its admission [would] have such a misleading effect, that the jury's decision-making process [would] be adversely affected. [T]he danger must "substantially" outweigh the probative value, and the mere possibility of danger will not be a basis for exclusion of evidence under [Evid. R.] 403. Exclusion based upon confusion usually is justified where the offered evidence would require the trier of fact to engage in intricate, extraordinary or impossible mental gymnastics in order to comprehend the import of the evidence or to assess its weight.'" Redwine at ¶ 21, quoting Weissenberger's Ohio Evidence Treatise (2007) 122, Section 403-5.
 {¶ 34} In this case, the trial court found that the domestic relations court's revised forms were irrelevant, and that "any probative value such forms may have would be *Page 11 
outweighed by their prejudicial effect of misleading the jury." Upon reviewing the record, we find the trial court did not abuse its discretion in reaching this conclusion, as the central issue in the case involved appellant's understanding of the forms she completed and whether she knowingly made false statements on such documents. Moreover, appellant has failed to demonstrate any prejudice resulting from the trial court's alleged error in this regard, as appellant was permitted to cross-examine the state's witnesses concerning the forms she completed. Judge Kessler, for instance, testified that many petitioners tend to leave portions of such forms blank due to their emotional state at the time they are asked to complete the forms, and because they are unknowledgeable about the law. Appellant was also permitted to testify at trial concerning her understanding of the questions on such forms.
 {¶ 35} Based upon the foregoing, we find appellant's third assignment of error without merit and overrule the same.
 {¶ 36} Judgment affirmed.
 WALSH, P.J., and BRESSLER, J., concur. *Page 1