[Cite as *State v. Sturdivant*, 2026-Ohio-2074.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025-CA-00086 |
|     Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2025CR0724C |
| JORDAN WORTHEY-STURDIVANT | Judgment:  Affirmed |
|     Defendant - Appellant | Date of Judgment Entry: June 2, 2026 |

BEFORE:    Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Christopher A. Piekarski, for Plaintiff-Appellee; Mary Catherine Corrigan, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}    Appellant Jordan Worthey-Sturdivant ("Worthey-Sturdivant") appeals his conviction and sentence after a jury trial in the Court of Common Pleas for Stark County, Ohio. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}    The Stark County Grand Jury indicted 19-year-old Worthey-Sturdivant on one count of felonious assault, a second-degree felony. Worthey-Sturdivant filed a motion to remand the case to juvenile court, arguing that, because he was in the custody of the Ohio Department of Youth Services ("DYS") at the time of the alleged incident, the charges should have originated in juvenile court.

{¶3} The case proceeded to a jury trial with two co-defendants, Carreyon Dukes and Demonte Williams. Prior to voir dire, the trial court addressed Worthey-Sturdivant's motion to remand the case to the juvenile court:

> Okay. We talked about that. I did not receive a copy of that yet, but I've received the same motion in other cases … And we talked about it at the pretrial, and I indicated that I would deny that.

(1 Tr. 7-8.)[1]

{¶4} The parties stipulated to the admissibility of the victim's medical records and the surveillance videos. (2 Tr. 154-155.) Only two witnesses testified at trial.

**Testimony of Trooper Jason Halstead**

{¶5} Trooper Jason Halstead of the Ohio State Highway Patrol testified that he works in the Office of Investigative Services, which functions as a detective bureau. (2 Tr. at 159.) His duties include investigating crimes occurring within DYS facilities.

{¶6} Halstead testified that he was assigned to investigate an incident at the Indian River Juvenile Correctional Facility, one of three male juvenile correctional facilities in Ohio that houses youth ages fourteen through twenty-one. (2 Tr. 160.) Halstead testified that he was notified two days after the incident had occurred. (2 Tr. 160-161.)

{¶7} The incident was captured on surveillance video, which was admitted into evidence. (2 Tr. 154-155, 213-214; State's Ex. 1.) The video contains no audio.

---

[1] For clarity, the transcript of Worthey-Sturdivant's jury trial will be referred to as "__Tr.__" signifying the volume and page number.

{¶8}   According to Halstead, the video shows seven youths gathered in a common area of the facility. The victim, A.M[2]., approached two seated individuals, appeared to speak with them, and then sat on a stool. (2 Tr. 162-163.) Shortly thereafter, co-defendant Dukes ran toward A.M., tackled him from the stool, and forced him to the floor. (2 Tr. 163.) Halstead identified this as the first assault. (2 Tr. at 168.)

{¶9}   Halstead further testified that a juvenile corrections officer briefly entered the room and then left. (2 Tr. 168-169.) After the officer exited, Dukes, Worthey-Sturdivant, and co-defendant Williams began striking the victim. (2 Tr. 164.) Halstead described this as the second assault, during which the victim was punched and kicked multiple times. (2 Tr. 169.) Sturdivant — assisted by Dukes — lifted A.M. and then threw him headfirst onto the carpeted concrete floor. Halstead testified that A.M. briefly lost consciousness. (2 Tr. 164.)

{¶10} Halstead acknowledged that his understanding of the victim's loss of consciousness was based in part on medical notes made by the nurse for the facility. (2 Tr. 173.) Halstead also testified that other entries in the same records indicated no loss of consciousness by A.M. (*Id.*)

{¶11}   Halstead testified that, after A.M. was slammed head-first onto the floor, one of the co-defendants, he was unsure of which one, retrieved a water bottle and poured water on the victim's face. (2 Tr. 164, 169.) Another individual examined the back of the victim's head and appeared to observe blood. (2 Tr. 169-170.)

{¶12} Halstead testified that the victim reported the incident to staff later that night, between approximately 2:00 and 2:30 a.m. (2 Tr. 174, 177.)

---

[2] A.M. did not testify at trial.

{¶13} Halstead testified that on March 4, 2025, he interviewed the victim and observed a laceration on his head. (2 Tr. 169-170.)

{¶14} Halstead also interviewed Worthey-Sturdivant and Williams. Both described the incident as "horseplay." (2 Tr. 171.) Worthey-Sturdivant stated that the victim "got squirrelly" and "ended up" on the floor when Worthey-Sturdivant attempted to lift him. (*Id.*) Halstead testified that Dukes declined to be interviewed.

**Testimony of Dr. Scott Poland**

{¶15} Dr. Scott Poland, a physician affiliated with the Cleveland Clinic and practicing at Mercy Hospital in Canton, Ohio, testified that he treated the 17-year-old victim on March 2, 2025. (2 Tr. 180-181.) Dr. Poland testified that the victim presented with complaints of head, neck, and upper back pain, as well as vomiting. (2 Tr. 182-183.)

{¶16} Dr. Poland testified that he ordered multiple diagnostic tests, including CT scans of the head, cervical spine, and thoracic spine. (2 Tr. 190-192, 203-205.) The results revealed no skull fractures, intracranial bleeding, or spinal misalignment. (2 Tr. 206, 208.)

{¶17} Dr. Poland testified that the victim sustained a superficial laceration that did not require stitches. (2 Tr. 183-184.) He provided the victim with written discharge instructions. (2 Tr. 193, 198-200.)

{¶18} Dr. Poland testified that, based upon his observations and what A.M. relayed to him, he concluded at the time A.M.'s head injury *could* be classified as a concussion, although Dr. Poland acknowledged that he did not include a diagnosis of concussion in his "after-visit summary." The doctor testified that the listed diagnoses in that kind of document are often "complaint based," but he did provide concussion precautions to A.M. at the conclusion of A.M.'s hospital visit.

{¶19} Dr. Poland testified that he recommended neurological follow-up, and he was unaware whether such follow-up occurred. (2 Tr. 185.) He further explained that the long-term effects of a closed-head injury cannot be predicted with certainty. (2 Tr. 199-200.)

**Defense Case and Jury Deliberations**

{¶20} The defense rested without presenting evidence. Following closing arguments, the jury began deliberations during which the jury submitted several questions, including requests to define "aiding and abetting" and "incapacitated," and inquiries regarding the scope of complicity. (2 Tr. 268-269.) The trial court instructed the jury to rely on the evidence and the previously provided jury instructions. (*Id.*)

**Verdict and Post-Trial Motion**

{¶21} On June 11, 2025, the jury found Worthey-Sturdivant and Dukes guilty of felonious assault. The jury found co-defendant Williams guilty of the lesser offense of misdemeanor assault[3]. (2 Tr. 271-272.)

{¶22} On June 16, 2025, Worthey-Sturdivant filed a motion for a new trial or, alternatively, modification of the verdict. He argued that the verdicts were inconsistent, that the evidence was insufficient, and that a manifest miscarriage of justice had occurred.

**Sentencing**

{¶23} Sentencing occurred on June 16, 2025. The trial court denied the motion for a new trial, concluding that the verdicts were not inconsistent and that the jury could reasonably have distinguished between two separate incidents. (Sent. Tr. 8-9.)

---

[3] The jury was instructed on the offense of misdemeanor assault as a lesser included offense of felonious assault. (2 Tr. 221-222.)

**{¶24}** The trial court sentenced Worthey-Sturdivant to an indefinite prison term of a minimum of eight years and a potential maximum of twelve years. (Sent. Tr. 15.)

**Assignments of Error**

**{¶25}** Worthey-Sturdivant appealed and raises four assignments of error for our consideration,

**{¶26}** "I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO REMAND TO JUVENILE COURT."

**{¶27}** "II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT."

**{¶28}** "III. THE CONVICTIONS [sic.] ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶29}** "IV. THE TRIAL COURT ERRED BY FAILING TO GRANT THE APPELLANT'S MOTION FOR NEW TRIAL OR MODIFICATION OF VERDICT."

I.

**{¶30}** In his first assignment of error, Worthey-Sturdivant argues that the trial court erred in denying his pretrial motion to remand the matter to juvenile court. He contends that, because he was a "felony delinquent" in the custody of the Ohio Department of Youth Services ("DYS") at the time of the alleged offense, the juvenile court retained continuing jurisdiction over him, thereby depriving the general division of jurisdiction. We disagree.

**Subject-matter jurisdiction**

**{¶31}** Subject-matter jurisdiction refers to a court's constitutional or statutory authority to adjudicate a class of cases. *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11-12. It is

determined without regard to the rights of the parties and instead focuses on whether the court itself is competent to hear the controversy. *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 19; *State v. Harper*, 2020-Ohio-2913, ¶ 23.

{¶32} Because subject-matter jurisdiction concerns the court's fundamental authority, it cannot be waived or forfeited and may be raised at any time. *United States v. Cotton*, 535 U.S. 625, 630 (2002); *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). In the absence of such jurisdiction, a court lacks authority to act and may do nothing other than dismiss the case. *Pratts* at ¶ 21; *In re K.K.*, 2022-Ohio-3888, ¶ 49.

{¶33} Accordingly, arguments based on waiver, res judicata, or lack of prejudice cannot confer subject-matter jurisdiction where it does not exist. *State v. Clay*, 2018-Ohio-985, ¶ 39 (7th Dist.). *See also State ex rel. Holman v. Ohio Adult Parole Auth.*, 2023-Ohio-692, ¶ 10 (A direct appeal or a writ of prohibition may issue to correct the result of a prior jurisdictionally unauthorized action if an inferior tribunal patently and unambiguously lacked jurisdiction.); *State ex rel. Baker v. State Personnel Bd. of Rev.*, 85 Ohio St.3d 640, 642 (1999); *Hinkle v. Mingo*, 2024-Ohio-1665, ¶ 7 (10th Dist.).

### Juvenile court jurisdiction

{¶34} The jurisdiction of Ohio courts of common pleas is defined by statute. Ohio Constitution, Article IV, Section 4(B); *In re K.K.* at ¶ 52. As a general matter, the court of common pleas has original jurisdiction over all criminal offenses. R.C. 2931.03; *State v. Hudson*, 2022-Ohio-1435, ¶ 23.

{¶35} Juvenile courts, as a division of the courts of common pleas, possess exclusive original jurisdiction over certain matters defined by statute. R.C. 2151.23; R.C. 2152.02. Relevant here, a "child" is generally defined as a person under eighteen years of

age, subject to limited exceptions. *See,* R.C. 2152.02(C)(3). An "adult" is defined as an individual who is eighteen years of age or older. *See*, R.C. 2151.011(D)(2).

{¶36} Under this statutory framework, juvenile courts retain exclusive jurisdiction over individuals who commit acts while under the age of eighteen that would constitute felonies if committed by an adult. *Hudson* at ¶ 3. However, that jurisdiction is predicated on the offender's age at the time of the offense.

**Analysis**

{¶37} Worthey-Sturdivant was nineteen years old at the time he committed the offense in this case. Thus, he was an adult under Ohio law when the alleged conduct occurred. Because the offense was not committed while he was a juvenile, the statutory provisions governing juvenile court jurisdiction do not apply.

{¶38} His argument that the juvenile court retained "continuing jurisdiction" based on his prior delinquency adjudication and DYS commitment is unpersuasive. While the juvenile court may retain jurisdiction over prior delinquency matters, that jurisdiction does not extend to new criminal conduct committed after the individual reaches the age of majority. The dispositive inquiry is the offender's age at the time of the charged offense, not his custodial status.

{¶39} Accordingly, because Worthey-Sturdivant committed the charged offense as an adult, jurisdiction properly lies with the general division of the court of common pleas. The trial court therefore did not err in denying the motion to remand the case to juvenile court.

{¶40} Worthey-Sturdivant's first assignment of error is overruled.

{¶41} In his second and third assignments of error, Worthey-Sturdivant challenges the evidentiary basis for his conviction, arguing both that the evidence was legally insufficient and that the jury's verdict was against the manifest weight of the evidence. Although these claims are analytically distinct, they arise from the same core contention - the State failed to establish that he caused serious physical harm to the victim. We address them in turn.

**Sufficiency of the Evidence**

{¶42} A challenge to the sufficiency of the evidence presents a question of law, which we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30. The dispositive question is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶43} Worthey-Sturdivant was convicted of felonious assault under R.C. 2903.11(A)(1), which requires proof that he knowingly caused serious physical harm to another. "Serious physical harm" includes, among other things, harm involving temporary, substantial incapacity. R.C. 2901.01(A)(5).

{¶44} The State presented evidence during the jury trial that Worthey-Sturdivant, acting with two co-defendants, violently assaulted the victim, who did not fight back. During the assault, Worthey-Sturdivant, assisted by Dukes, restrained the victim, inverted him, and slammed him head-first onto a carpet-covered concrete floor. The victim thereafter appeared limp and unresponsive, prompting the co-defendants to attempt to revive him, including by pouring water on his face. The victim later reported

vomiting and suffering from pain in his head, neck, and upper back, and sought medical treatment.

{¶45} Construing this evidence in the State's favor, a rational trier of fact could find that the victim was rendered unconscious during the assault. Even brief unconsciousness constitutes a temporary, substantial incapacity and, therefore, satisfies the statutory definition of serious physical harm. *See State v. Sales*, 2011-Ohio-2505, ¶ 19 (9th Dist.); *State v. Petty*, 2012-Ohio-2989, ¶ 34 (10th Dist.); *State v. Loy*, 2025-Ohio-5175, ¶ 17 (3d Dist.); *State v. Redwine*, 2007-Ohio-6413, ¶ 32 (12th Dist.).

{¶46} The absence of direct testimony from the victim does not render the evidence insufficient. The State may prove serious physical harm through lay testimony and circumstantial evidence. *State v. Brown*, 2019-Ohio-3486, ¶ 29-30 (5th Dist.). In this case, the jury was able to review the events as they occurred in real time via the video surveillance camera footage.

{¶47} Accordingly, the State presented sufficient evidence from which a rational trier of fact could find all elements of felonious assault proven beyond a reasonable doubt.

**Manifest Weight of the Evidence**

{¶48} Worthey-Sturdivant also contends that his conviction is against the manifest weight of the evidence, primarily asserting that the evidence of the victim's loss of consciousness was inconsistent and, therefore, not credible.

{¶49} A manifest-weight challenge addresses the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. In conducting this review, we examine the entire record, weigh the evidence and all reasonable inferences, and consider witness credibility. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversal is reserved for

the exceptional case in which the jury clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶50} Here, the jury was presented with both testimonial and objective evidence. In addition to witness testimony describing the assault and its aftermath, the jury viewed video footage capturing the incident as it occurred. The jury also considered medical records reflecting the victim's post-assault condition. This evidence corroborated the State's theory of the case.

{¶51} Although Worthey-Sturdivant emphasizes inconsistencies in the testimony regarding whether the victim lost consciousness, the resolution of such conflicts lies squarely within the province of the jury. The jury was free to credit the State's evidence and reject competing interpretations. Conflicting evidence does not render a conviction against the manifest weight of the evidence. *State v. Morris*, 2018-Ohio-5252, ¶ 51 (10th Dist.).

{¶52} Upon independently reviewing the entire record, we cannot conclude that the jury lost its way. The evidence does not weigh heavily against conviction, nor does it suggest a manifest miscarriage of justice. Rather, the record contains substantial, credible evidence supporting the jury's determination that Worthey-Sturdivant knowingly caused serious physical harm to the victim.

**Conclusion**

{¶53} Because the conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, Worthey-Sturdivant's second and third assignments of error are overruled.

IV.

{¶54} In his fourth assignment of error, Worthey-Sturdivant contends that the trial court erred in denying his motion for a new trial or, alternatively, modification of the verdict.

**Standard of Review and Governing Law**

{¶55} Crim.R. 33(A) permits a trial court to grant a new trial on specified grounds materially affecting a defendant's substantial rights, including irregularity in the proceedings, jury misconduct, error of law, or a verdict that is not sustained by sufficient evidence or is contrary to law. *See,* Crim.R. 33(A)(1)-(6). The rule also authorizes modification of a verdict where the evidence supports conviction on a lesser offense. Crim.R. 33(A)(4).

{¶56} A motion for a new trial is addressed to the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49 (1995); *State v. Glover*, 35 Ohio St.3d 18 (1988). Accordingly, we review the denial of such a motion for an abuse of discretion, which connotes a decision that is unreasonable, arbitrary, or unconscionable, or one that reflects a perversity of will, passion, prejudice, or a misapplication of law. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993); *State v. Beasley*, 2018-Ohio-16, ¶ 12.

{¶57} Further, a new trial is not warranted unless the record affirmatively demonstrates prejudice or that the defendant was denied a fair trial. Crim.R. 33(E).

**Analysis**

{¶58} Worthey-Sturdivant's motion was premised on two related claims: first, that the jury failed to properly complete the verdict forms as to co-defendant Williams, and second, that the verdicts among the co-defendants were inconsistent.

{¶59} Following the announcement of the verdicts, counsel was expressly given the opportunity to review the verdict forms. All counsel approached the bench and examined the forms. When asked whether there were any issues requiring the court's attention before the jury was discharged, counsel for Worthey-Sturdivant affirmatively responded that there were none. The jury was then polled, and each juror individually confirmed the verdicts. Only after the jury was discharged did Worthey-Sturdivant raise an objection and move for a new trial.

{¶60} This sequence undermines his claim of reversible error. Any alleged irregularity in the verdict forms could have been addressed before the jury was discharged. The failure to raise the issue at that time weighs heavily against a finding of prejudice.

{¶61} Nor does the asserted inconsistency among the co-defendants' verdicts provide a basis for relief. Worthey-Sturdivant relies on *State v. Huntley*, 30 Ohio App.3d 29 (1st Dist. 1986), but that reliance is misplaced. In *Huntley*, the appellant and his codefendant were tried together in a one-count indictment charging aggravated burglary. The jury found Huntley guilty of burglary. The same jury concluded that the codefendant was guilty of breaking and entering. In arriving at its verdict, the jury found the apartment at issue to be an occupied structure as to Huntley, while it found the same premises to be an unoccupied structure as to the codefendant. In *Huntley*, the same factual determination, whether the structure was occupied, yielded directly contradictory findings as to the co-defendants, creating a true legal inconsistency.

{¶62} No such inconsistency exists here. Although Williams undoubtedly joined in the assault, the video reveals that his actions were less egregious than the actions of his accomplices. The video evidence showed that Worthey-Sturdivant and Dukes actively

escalated the violence by lifting the victim, inverting him, and slamming him head-first onto a carpet-covered cement floor. Co-defendant Dukes not only initiated the initial assault, but he put the victim in a headlock and tackled him down onto the carpet-covered cement floor.

{¶63} By contrast, Williams's conduct, as depicted in the same video, consisted of attempting to revive and assist the victim after the assault. The video depicts Williams rolling A.M. over after the assault and attempting to revive him. The video further shows Williams retrieving a shirt and using it to wipe A.M.'s face. Williams is seen propping A.M. a little more upright against a different chair, tapping A.M.'s face a few times to try to rouse him, and then continuing to use the shirt to clean A.M.'s wound, as others look on. These differing actions could reasonably support differing verdicts.

{¶64} Inconsistent verdicts among co-defendants do not, in any event, mandate reversal. *Harris v. Rivera,* 454 U.S. 339, 345-346 (1981), citing *United States* v. *Dotterweich*, 320 U.S. 277, 279 (1943). Such outcomes may reflect the jury's assessment of individual culpability, or even lenity. *Dunn v. United States,* 284 U.S. 390, 394 (1932). The critical inquiry is whether the conviction at issue is supported by the evidence, not whether it aligns with verdicts returned as to other defendants. *State v. Castleberry,* 2007-Ohio-5803, ¶17 (9th Dist.); *State v. Kilgore,* 2023-Ohio-1786, ¶16 (9th Dist.).

{¶65} As previously discussed, Worthey-Sturdivant's conviction for felonious assault is supported by sufficient evidence and is not against the manifest weight of the evidence. He therefore cannot demonstrate that he was prejudiced by any alleged defect in the verdict forms relating to a co-defendant.

**Conclusion**

{¶66} The trial court acted within its discretion in denying the motion for a new trial or modification of the verdict. Worthey-Sturdivant has failed to demonstrate any irregularity that materially affected his substantial rights or deprived him of a fair trial.

{¶67} Accordingly, the fourth assignment of error is overruled.

{¶68} For the reasons set forth in the preceding Opinion, the judgment of the Court of Common Pleas for Stark County, Ohio is affirmed.

{¶69} Costs to be paid by Appellant Jordan Worthey-Sturdivant.

By: Popham, J.

Baldwin, P.J. and

Gormley, J., concur