The STATE of Ohio

v.

HOWELL.

Hamilton County Municipal Court.

No. 94–CRA–3330.

Decided May 25, 1994.

**24**

James L. Hardin, Assistant City Prosecutor, for the state.

*Timothy Young,* for defendant.

MARK P. PAINTER, Judge.

This case is before the court as a result of a preliminary hearing. The issue is whether there is probable cause to believe that a felony has been committed and, if so, that the defendant committed it. Crim.R. 5(B)(4).

I

Facts

Defendant, Tenna Howell, went to Walt Sweeney Automotive, Inc. (hereinafter "Sweeney"), a local automobile dealership, on January 7, 1994 to purchase a pickup truck. The salesman had been informed, by a finance company, that defendant had an approved loan, contingent upon defendant providing proof of income by January 10, 1994. Defendant chose a Ford Ranger pickup truck and the necessary paperwork was completed. The purchase price of the truck was $17,069.46. Defendant paid a $1,500 down payment and was given possession of the truck along with a temporary registration placard which was valid until February 6, 1994. Defendant signed a purchase agreement which included the following term: "I understand that my retail security agreement is contingent upon credit approval and that my credit application will be processed through one of Walt Sweeney Automotive, Inc.'s approved lending institutions. If credit is not approved, I promise to return the vehicle immediately upon demand."

For reasons unclear to this court, defendant did not provide the requisite proof of income to the finance company and the finance company did not pay Sweeney for the truck. Further, it seems that defendant just needed to furnish "paperwork" to the finance company. The prosecution's witness, an employee of Sweeney, testified that at least six phone calls were made to defendant demanding immediate return of the truck. Sweeney then sent a certified mail letter dated January 31, 1994 demanding immediate return of the truck. It is uncertain whether defendant actually received this letter. Sweeney also attempted, unsuccessfully, to repossess the vehicle. Finally, on February 4, Sweeney signed a criminal complaint against defendant, who was arrested. The vehicle was seized and returned to Sweeney, but defendant's down payment was not returned to her. This is the sorry state of this affair as it is presented to the court.

II

Discussion

Defendant is charged with violating R.C. 2913.03(B), unauthorized use of a vehicle, which states as follows: "No person shall knowingly use or operate an

aircraft, motor vehicle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent, and either remove it from this state, or keep possession of it for more than forty-eight hours." A violation of R.C. 2913.03(B) is a felony of the fourth degree, punishable by eighteen months to five years in jail and a fine up to $2,500. R.C. 2929.11(B)(7) and (C)(4). Since this case is at the preliminary hearing stage, this court is not asked to determine the defendant's guilt or innocence but only to determine whether or not probable cause exists to bind the defendant over to the grand jury. "Probable cause" has been defined to mean "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Ash v. Marlow* (1851), 20 Ohio 119, 130. See, also, *State v. Rose* (1991), 75 Ohio App.3d 656, 600 N.E.2d 382; *Rogers v. Barbera* (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162; *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360. Though some confusion seems to exist in the cases, the standard for probable cause at a preliminary hearing is whether there is sufficient credible evidence to cause the court to believe that the defendant committed the offense.

 On its face, R.C. 2913.03(B) prohibits operating a vehicle "without the consent" of the owner. Obviously, defendant had the consent of Sweeney to drive the truck off the lot. However, the Ohio Supreme Court in *State v. Rose* (1992), 63 Ohio St.3d 585, 589 N.E.2d 1315, stated "where an individual uses a motor vehicle beyond the scope of the owner's consent, he or she has violated R.C. 2913.03 because no consent has been given for a particular use. Furthermore, even though consent may be given for a specific purpose, the owner may revoke consent after notifying the borrower he or she is no longer entitled to use the vehicle. Thus, R.C. 2913.03 prohibits the use or operation of a motor vehicle without, beyond, or after revocation of the owner's consent." *Rose* at 589, 589 N.E.2d at 1318. Thus, in *Rose*, the Ohio Supreme Court simply engrafted the "beyond the scope of * * * consent" language which exists in the general theft statute in R.C. 2913.02 onto R.C. 2913.03.

In *Rose*, the owner had simply allowed an acquaintance to use a vehicle to go to work, upon an agreement that he would immediately return it. The defendant kept the vehicle for three days, even after the owner demanded its return. The defendant in *Rose* had no legal interest in the vehicle whatsoever.

 The next question before this court then is who is the "owner" of the truck for the purposes of R.C. 2913.03(B), defendant or Sweeney, either, neither or both? The prosecution relies on R.C. 4505.01 *et seq.*, the Ohio Certificate of Title Act, to show that Sweeney is the rightful owner of the truck. The prosecution's argument is that, pursuant to R.C. 4505.04, ownership of a motor

vehicle is determined by who holds the certificate of title to the automobile and since Sweeney has yet to transfer title to defendant, Sweeney is still the legal owner of the motor vehicle. However, the prosecution's reliance is misplaced.

R.C. 2913.01(D) defines "owner," as it is used in R.C. Chapter 2913, as "any person, other than the actor, who is the owner of or who has possession or control or any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful."

The Ohio Supreme Court addressed the conflict between these two provisions where the ownership of a motor vehicle is at issue due to a criminal charge pursuant to R.C. Chapter 2913 in *State v. Rhodes* (1982), 2 Ohio St.3d 74, 2 OBR 629, 442 N.E.2d 1299. The *Rhodes* court stated: " * * * R.C. 4505.04 has been construed by this court to apply in civil cases wherein parties were asserting rival or competing interests pertaining to a motor vehicle. * * * 'The reason for the statute is to determine what proof, *i.e.*, certificate of title, should be required where a plaintiff is asserting some right pertaining to his allegedly owned automobile and defendant's defense or claim is based on a claimed right, title or interest in the same automobile. The reason ceases when the defendant's defense is not based upon some claimed right, title or interest in the same automobile.' *Gorgan Chrysler–Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 95 [13 O.O.3d 154, 156, 392 N.E.2d 1283, 1286] at fn. 4. This succinct statement is an accurate reflection of this statute's *inappropriateness in a prosecution of a theft offense.*" (Emphasis added.) *State v. Rhodes* (1982), 2 Ohio St.3d at 75–76, 2 OBR at 630, 442 N.E.2d at 1301. See, also, *State v. Shimits* (1984), 10 Ohio St.3d 83, 10 OBR 413, 461 N.E.2d 1278. While these cases are usually cited as holding that the prosecution *need not* produce the certificate of title to prove ownership, they conversely state that the certificate of title is not necessarily *appropriate or determinative* of ownership for criminal law purposes.

The *Rhodes* court further went on to say: "The state must prove that the defendant deprived the owner, as such term is defined in R.C. 2913.01(D), of the vehicle. This definition makes it clear that the 'ownership, possession, control, license or interest' of the 'owner' as that term is used in R.C. 2913.01 through 2913.71 may be unlawful in itself. It is the 'actor's,' *i.e.*, the defendant's relationship to the property which is controlling. The important question is not whether the person from whom the property was stolen was the actual owner, *but rather whether the defendant had any lawful right to possession.*" (Emphasis added.) *Id.* at 76, 2 OBR at 631, 442 N.E.2d at 1301–1302.

Of course the above cases simply state the old maxim that one can steal from a thief, or non-owner, and serve to relieve the prosecution of the often difficult burden of proving actual, titled ownership of an obviously stolen vehicle. "The

gist [of the offense] is a wrongful taking, rather than a particular ownership, and it is sufficient that the thief knows that the property or services are not his to take." Commentary to R.C. 2913.01, citing *State v. Shoemaker* (1917), 96 Ohio St. 570, 117 N.E. 958. This is not the situation the present case. The defendant is not a thief—there is no allegation, or even suggestion, that defendant intended to defraud Sweeney.

The facts before this court present a case where defendant initially had lawful possession of the vehicle. Sweeney voluntarily delivered possession to defendant. It gave defendant keys to the vehicle and issued a temporary registration placard valid for thirty days entitling the defendant to drive the motor vehicle on Ohio roadways. There is no dispute that defendant initially had lawful possession.

The next question is whether or not there was an event that terminated defendant's right to lawful possession. The prosecution points to the terms of the purchase agreement and argues that defendant's failure to provide proof of income to the finance company and Sweeney's demand for immediate return of the truck terminated defendant's lawful right to possession of the motor vehicle. The prosecution's argument is based on a civil breach of contract action and not on the definition of "owner" provided in R.C. 2913.01(D). Defendant paid a $1,500 down payment, approximately ten percent of the purchase price. The down payment has yet to be returned to defendant. Clearly, defendant still holds an interest in the truck and as such would come within the definition of "owner" as set forth in R.C. 2913.01(D), except that she is the "actor" and the statute includes everyone *but* the actor as an owner. Read literally and applied to the facts of this case, this definition would allow defendant to charge Sweeney with unauthorized use of the truck if Sweeney had been successful in repossessing it. Such an interpretation could not have been intended by the legislature. This court, operating in the real world with real facts before it, must engraft a common-sense interpretation thereon.

In this regard, *Preston v. Kelsey* (May 9, 1986), Lucas App. No. L–85–352, unreported, 1986 WL 5376, is instructive. The Sixth Appellate District reasoned that where there is a dispute as to ownership of a vehicle, *probable cause does not exist* to charge an individual with unauthorized use of a motor vehicle. In *Preston*, the plaintiff and defendant had entered into an agreement where the plaintiff agreed to buy a car from defendant for approximately $5,000. Plaintiff did not have the money and defendant agreed to let plaintiff do work for him at the rate of $5 per hour towards the purchase price of the car. Plaintiff was given possession of the car. After a few years, plaintiff believed that he had worked sufficient hours to discharge the debt, and requested defendant to convey title to him. Defendant felt that plaintiff had not worked sufficient hours, refused to transfer title and asked for the car to be returned to him. Plaintiff refused to

return the car. Defendant then brought unauthorized use charges against plaintiff who was arrested for the same alleged violation as in the case at bar. Charges were later dropped by defendant. Plaintiff then brought an action against defendant for malicious prosecution.

The *Preston* court stated the evidence showed that defendant knew there was a dispute over the title and the automobile and plaintiff possessed the vehicle under claim of ownership. Defendant knew that plaintiff considered the automobile to be his. As a result, a cautious man in defendant's position would not have believed that plaintiff had knowingly used the vehicle without the owner's consent. *Preston* would seem to hold that, where there is a legitimate claim to ownership, criminal charges are not appropriate. Here, the defendant could reasonably claim that she had the right to possess the truck in light of her $1,500 down payment and belief that the "paperwork" could be straightened out and all would be well.

From a public policy standpoint, allowing a criminal charge in this kind of case is ludicrous. In a civil sense, of course, Sweeney may well have a better or superior right to possession. Sweeney has a plethora of civil remedies available to it in a court exercising civil jurisdiction. The civil division of this court has jurisdiction in replevin actions, which embody the historic remedy in this type of case. R.C. Chapter 2737. Those procedures were apparently not employed here. Instead, defendant was arrested on a felony charge.

This court has previously noted a disturbing tendency to bring criminal charges based on issues more properly determined in a civil court. See *State v. Cote* (1991), 62 Ohio Misc.2d 202, 205, 594 N.E.2d 198, 201; *State v. Glenn* (1990), 56 Ohio Misc.2d 1, 564 N.E.2d 1149; *State v. Rudd* (1988), 55 Ohio Misc.2d 1, 562 N.E.2d 955. Great care should be taken that the criminal law not be employed to attempt to right an alleged civil wrong. Criminals enough we have.

### III

### Conclusion

Defendant had sufficient interest in the truck pursuant to R.C. 2913.01(D) to be considered an "owner" as it is used in R.C. 2913.03(B), except that she is the "actor" and excluded from the definition of "owner." Common sense dictates, and this court holds, that unauthorized use charges do not properly lie in the case of a defendant who has a legitimate claim to possession, even though that claim may be legally inferior to that of another.

It appears from the facts that defendant did not live up to the terms of the bargain she entered into with Sweeney, or perhaps did not complete the necessary "paperwork" with the finance company. If these facts are true, this

court in a proper civil setting would be empowered to assess civil damages against defendant for breach of contract, and in a replevin action award possession of the truck to Sweeney. Nonetheless, this court can find no probable cause that a felony has been committed and this court will not convert a possible civil wrong into a criminal proceeding.

*Defendant discharged.*