[Cite as *State v. McMillen*, 2016-Ohio-370.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

LLOYD E. MCMILLEN

    Appellant

C.A. No.     27666

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2013 10 2910

DECISION AND JOURNAL ENTRY

Dated: February 3, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Lloyd McMillen, appeals the judgment of the Summit County Court of Common Pleas convicting him of theft against the elderly. For the reasons set forth below, we affirm.

I.

{¶2} On November 26, 2013, the grand jury indicted McMillen on one count of theft against the elderly in violation of R.C. 2913.02(A)(3), (B)(3), a fifth degree felony. McMillen pled not guilty and the matter proceeded to a jury trial. At the close of the State's case-in-chief, the trial court allowed McMillen to reserve his right to make a Crim.R. 29 motion for acquittal following the defense's case. After the defense rested at trial, McMillen made a Crim.R. 29 motion, which the trial court denied. The jury ultimately found McMillen guilty of the sole count in the indictment and the trial court sentenced McMillen to 12 months in prison, but suspended the imposition of that sentence and ordered McMillen to complete 12 months of

community control.  The trial court also ordered McMillen to pay $330.00 in restitution to the victim.

{¶3}   McMillen filed this timely appeal, raising two assignments of error for our review.  To facilitate our analysis, we elect to address his assignments of error together.

II.

### Assignment of Error I

**The trial court committed reversible error when it found Mr. McMillen guilty of theft from the elderly because the evidence was insufficient to support such a finding.**

### Assignment of Error II

**Mr. McMillen's conviction was against the manifest weight of the evidence, meriting reversal.**

{¶4}   In his two assignments of error, McMillen argues that it was erroneous for the trial court to enter a judgment of conviction that was unsupported by either sufficient evidence or the manifest weight of the evidence.  We disagree.

{¶5}   "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo.  *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

{¶6} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶7} This matter implicates McMillen's conviction on theft against the elderly under R.C. 2913.02(A)(3), which prohibits a person, "with purpose to deprive the owner of property or services, [from] knowingly obtain[ing] or exert[ing] control over either the property or services * * * [b]y deception[.]" Deception means:

> knowingly deceiving another or causing another to be deceived by any false or
> misleading representation, by withholding information, by preventing
> another from acquiring information, or by any other conduct, act, or omission that
> creates, confirms, or perpetuates a false impression in another, including a false
> impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A).

{¶8} One purposely deprives another of property or services when he has the specific intent to "[a]ccept, use, or appropriate money * * * with purpose not to give proper consideration in return for the money * * * and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3); *see* R.C. 2901.22(A). An individual "acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Where the victim is elderly, and the defendant steals less than $1,000.00 worth of services or property, theft is a fifth degree felony. R.C. 2913.02(B)(3).

{¶9} Here, the victim, who was 74 years of age at the time of the offense, testified via deposition that on November 30, 2012, McMillen, a roofing subcontractor, came to her home in Cuyahoga Falls, Ohio to fix a leak in her roof. The homeowner testified that she and McMillen discussed possible repair options and costs after McMillen examined the roof. She further testified that McMillen agreed to repair a soil vent, fix the chimney flashing, and reseal nails all for $330.00. McMillen testified that he took several photographs of the roof on his cell phone, which he claimed was standard protocol for subcontractors who needed to submit photographs of their projects in order to get paid. McMillen, however, only took photographs of the roof before his repairs. He never took photographs of the roof following his repairs because, according to him, the battery on his cell phone had died. It is undisputed that McMillen never showed any of the photographs to the homeowner, despite the fact that the homeowner testified that McMillen agreed to provide her with "before" and "after" photographs, as she was not physically able to inspect the quality of the repairs on her roof. The homeowner also claims that she asked to see the photographs before McMillen left, but McMillen told her that his phone was not working and that he would provide her with the photographs later, which he never did. The homeowner

testified that McMillen was only on her roof for about 30 minutes before leaving, which McMillen disputes. The homeowner stated that she gave a check for the full amount of $330.00 to McMillen because he represented to her that he had completed all of the work that they agreed upon. The homeowner also testified that she never would have paid McMillen if she knew that he did not repair her roof.

{¶10} The homeowner testified that her roof continued to leak after McMillen departed. She testified that she called McMillen on several occasions, but he either did not answer his phone or he would agree to reexamine her roof, but never came. She also testified that she later called two other roofers to independently examine her roof. According to the homeowner, the results of the two roofers' respective examinations caused her to doubt whether McMillen performed any work on her roof at all. She testified that she again called McMillen and demanded a full refund because she suspected that he did not do any work on her roof. After McMillen refused to provide a refund, the homeowner contacted the police. According to the homeowner, almost ten months after McMillen supposedly worked on the homeowner's roof, she hired another roofing company to finally repair her leaking roof. The new roofer testified at trial that, in his opinion, it appeared as if no work had been done on the homeowner's roof when he arrived to fix it.

{¶11} Detective Dominic Perella of the Cuyahoga Falls Police Department investigated the homeowner's complaint against McMillen. According to Detective Perella's testimony, he spoke with McMillen via telephone and asked McMillan to send him the "before" pictures that he took of the homeowner's roof. It took McMillen nearly two months to send those photographs to him. Detective Perella testified that he subsequently showed McMillen's "before" photographs to the roofer who ultimately fixed the homeowner's roof. According to the

new roofer, McMillen's "before" photographs from November 2012 matched the condition of the homeowner's roof on the date that the new roofer appeared to fix the roof.

{¶12} After viewing this evidence in a light most favorable to the State, we conclude that the evidence presented at trial was sufficient for a jury to conclude that McMillen purposely deprived the homeowner of $330.00 by deception. The homeowner testified that she paid McMillen $330.00 for repair work that was never performed. This testimony was buttressed by the subsequent roofer's testimony that, in his opinion, it appeared as if no work was done to the roof prior to his repairs in August 2013. In light of the foregoing, we determine that the State met its burden of production in this matter.

{¶13} Turning to McMillen's manifest weight challenge, he contends that his conviction was against the manifest weight of the evidence because the State's witnesses lacked credibility. For example, McMillen alleges that the homeowner's testimony regarding her interactions with him on the day in question was "contradictory, unreasonable, doubtful and at times incredible." Moreover, McMillen argues that the testimony of the new roofer who was hired to finally repair the roof ten months after the day in question was suspect, as his memory of the roof's condition was limited. However, the jury apparently accepted the testimony of the State's witnesses which, if believed, demonstrated that McMillen received $330.00 for work that he claimed to have done, but did not actually perform. Although McMillen attempted to show through direct and cross-examination that he actually performed the repairs to the homeowner's roof and that the State's witnesses lacked credibility, the jury was free to disregard such a theory. After reviewing the entire record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting McMillen of theft against the elderly. *See State v. Lewis*, 9th Dist. Summit No. 21722, 2004-Ohio-1233 (concluding that defendant's conviction for

theft by deception of the elderly was neither insufficient nor against the manifest weight of the evidence).

**{¶14}** Accordingly, McMillen's two assignments of error are overruled.

III.

**{¶15}** McMillen's two assignments of error are both overruled and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶16} I respectfully dissent. I would reverse McMillen's conviction as being against the manifest weight of the evidence as the new roofer specifically testified that some recent work had been done to the roof.

{¶17} The transcript in this case reads more like a civil action than a criminal prosecution. I agree with Judge Painter's position that we should refrain from attempting to remedy alleged civil wrongs in the criminal context.

> In several opinions written when he was a judge for the Hamilton County Municipal court, Judge Painter observed that too often civil wrongs are inappropriately placed into the context of criminal wrongdoing. In one case where the defendant was accused of theft for failing to make timely payments or return some furniture, the trial court wrote:
>
> From a public policy standpoint, allowing a criminal conviction in this type of case would, simply stated, be ridiculous. The prosecuting witnesses and their employer ***, have myriad rights and remedies in a court exercising civil jurisdiction.
>
> *State v. Glenn*, 56 Ohio Misc.2d 1, 3 (1990). Noting a disturbing tendency to bring criminal charges in cases more properly decided in a civil court, Judge Painter stated that "[g]reat care should be taken that the criminal law not be employed to attempt to right an alleged civil wrong. Criminals enough we have." *State v. Howell*, 64 Ohio Misc.2d 23, 29 (1994).

*State v. Gordon*, 3d Dist. Putnam Nos. 12-10-04, 12-10-05, 2011-Ohio-5738, ¶ 59.

{¶18} For these reasons, I would reverse and remand.

APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.