[Cite as *State v. Thompson*, 2016-Ohio-4689.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 15AP0016 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| STEPHEN M. THOMPSON | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE Nos. 13-CR-0137 |
| | 13-CR-0079 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Stephen Thompson, appeals the judgment of the Wayne County Court of Common Pleas convicting him of several offenses and sentencing him to a total prison term of eight years. For the reasons that follow, we affirm Thompson's convictions but reverse the imposition of consecutive sentences and remand the matter for the trial court to engage in the necessary sentencing analysis under R.C. 2929.14(C)(4).

I.

{¶2} Sergeant Chris Conwill of the Wooster Police Department responded to a dispatch indicating that there was a vehicle at a nearby fast food restaurant with a possibly intoxicated driver. Thompson was later identified as the driver of the vehicle. After locating the vehicle identified in the report, Sergeant Conwill followed it as it drove away from the restaurant and observed the vehicle make several traffic infractions. Sergeant Conwill saw the vehicle make an abrupt turn into a private driveway that went through the front yard of a residence. Sergeant

Conwill interpreted this abrupt turn as an effort to evade police so he followed the vehicle, parked behind it, and pointed a spotlight at it.

{¶3} Sergeant Conwill approached the vehicle, which was still in the driveway, facing the residence, and he observed the person in the front passenger seat vomit outside of the passenger side. Sergeant Conwill positioned himself behind the driver's side of the vehicle and he made eye contact with Thompson as Thompson looked over his shoulder. Around the time of this interaction, Trooper Keith McClintock of the Ohio State Highway Patrol also arrived on the scene, exited his cruiser, and drew his sidearm as the vehicle's passenger door opened.

{¶4} After seeing Sergeant Conwill, Thompson revved his vehicle's engine, accelerated, and started to drive further down the driveway towards the residence. He then turned left onto the yard and maneuvered his vehicle around a tree before driving back towards the road as he straddled the driveway and the yard. Thompson was driving towards the road at approximately 20 to 30 miles per hour while fishtailing and heading directly toward Trooper McClintock, who was fearful for his life as he stood in a narrow area between a police cruiser and a nearby embankment. Trooper McClintock subsequently moved left out of the vehicle's path and fired three rounds at it. Thompson then crashed the vehicle into the embankment, got out of the vehicle, and began to flee on foot. Trooper McClintock chased Thompson on foot and eventually tackled him. During the ensuing entanglement, Thompson hit Trooper McClintock in the head with a flashlight before Sergeant Conwill reached their location and used a stun-gun to immobilize Thompson.

{¶5} Thompson was arrested and transported to the hospital. After obtaining a warrant, the hospital staff drew blood from Thompson, which revealed a blood alcohol content of .17, over twice the legal limit, and the presence of marijuana. Once his medical treatment was

completed, Thompson was escorted to the county jail. After Sheriff Deputy Kirk Shelly instructed Thompson to use the restroom and change, Thompson grabbed the deputy by the throat with such force that he drew blood and tore skin from the deputy's neck.

{¶6} The Grand Jury indicted Thompson on the following: (1) two counts of felonious assault on a peace officer in violation of R.C. 2903.11(A)(2), a felony of the first degree; (2) two counts of assault on a peace officer in violation of R.C. 2903.13(A), a felony of the fourth degree; (3) one count of obstructing official business in violation of R.C. 2921.31(A), a felony of the fifth degree; (4) one count of OVI in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and (5) one count of OVI in violation of R.C. 4511.19(A)(1)(c), a misdemeanor of the first degree.

{¶7} The matter proceeded to a jury trial during which the trial court allowed the State to amend the indictment to include an allegation that the offenses occurred in Wayne County. The trial court also granted Thompson's Crim.R. 29 motion for acquittal on one of the felonious assault counts. The jury found Thompson guilty on the remaining counts.

{¶8} At sentencing, the trial court merged Thompson's OVI convictions for the purposes of sentencing. It subsequently sentenced Thompson as follows: (1) five years on the felonious assault conviction; (2) 18 months on each assault conviction; and (3) six months for the OVI conviction. The sentences for the felonious assault and assault convictions were ordered to run consecutively while the sentence for the OVI conviction was ordered to run concurrently, which resulted in a total prison term of eight years. The trial court also ordered that Thompson pay a $750 fine for the obstructing official business conviction.

{¶9} Thompson timely appealed his convictions and sentence, presenting seven assignments of error for our review. To facilitate our analysis, we elect to address the assignments of error out of order.

II.

**Assignment of Error IV**

**The trial court erred in amending the indictment to include the allegation that the offenses were committed in Wayne County.**

{¶10} In his fourth assignment of error, Thompson asserts that the trial court erred by allowing the State to amend the indictment during the course of trial. We disagree.

{¶11} The parties dispute the proper standard of review on this point. Thompson argues that we should apply de novo review because the amendment violated his constitutional right to an indictment after grand jury review. We agree with the State, however, that the abuse of discretion standard applies here since the amendment did not alter the identity of the crime charged. *See State v. Gray*, 9th Dist. Summit No. 27365, 2015-Ohio-1248, ¶ 7 ("A trial court's decision to allow the amendment of an indictment is reviewed under an abuse-of-discretion standard."); *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 23 ("If the amendment does not change the name or identity of the crime charged, then we apply an abuse of discretion standard to review the trial court's decision to allow a Crim.R. 7(D) amendment."). An abuse of discretion is more than an error of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, we may not simply substitute our own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). "In addition to demonstrating that the trial court abused its discretion, the defendant must also

show that the amendment prejudiced his defense in order to prove that the trial court committed reversible error." *Gray* at ¶ 7.

**{¶12}** Crim.R. 7(D) governs the amendment of indictments. *State v. Bennett*, 9th Dist. Lorain No. 10CA009917, 2011-Ohio-6679, ¶ 8. The rule pertinently states that trial courts "may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Crim.R. 7(D). Because allegations regarding the venue of charged offenses do not implicate the identity of the crime charged, several districts of the Court of Appeals have previously determined that a trial court is authorized under Crim.R. 7(D) to allow the amendment of an indictment to include such allegations. *See State v. Pheanis*, 2d Dist. Montgomery No. 26560, 2015-Ohio-5015, ¶ 24 (determining that trial court did not abuse its discretion by allowing amendment to allege that offenses occurred in Greene and Pike Counties because the amendment "did not change the name or identity of the charges brought against [the defendant]"); *In re Beeman*, 11th Dist. Lake No. 95-L-023, 1996 WL 494877, *6 (Aug. 16, 1996) ("[I]n applying Crim.R. 7(D), the courts of this state have held that allegations as to the venue * * * can be amended at any time because such amendments do not alter the nature of the charged offense."); *State v. Williams*, 53 Ohio App.3d 1, 5 (10th Dist.1988) ("Amending the indictment to allege that the offenses or elements of them * * * occurred in Franklin County would not change the name or identity of the charges brought against [the defendant]. Therefore, according to Crim.R. 7(D), the trial court should have allowed the indictment to be amended as requested."); *see also State v. Smith*, 87 Ohio St.3d 424, 435 (2000) ("Venue is not a material element of any crime[.]").

**{¶13}** Here, the State requested to amend the indictment to include an allegation that the charged offenses occurred in Wayne County. Such an amendment was permissible under Crim.R. 7(D) and we can discern no abuse of discretion in the trial court's allowance of the amendment in this matter. There is no indication in the record that Thompson was unaware that the incident giving rise to the charges occurred in Wayne County or that he was surprised by the allegation. Indeed, Thompson has not made any argument that he was prejudiced by the amendment. *See* App.R. 16(A)(7).

**{¶14}** Rather, Thompson's arguments both below and on appeal emphasize that the failure to include venue in the original indictment deprives him of his right to a grand jury presentment. In support of this proposition, Thompson cites to *State v. Headley*, 6 Ohio St.3d 475 (1983). But, *Headley* is distinguishable because, in regard to venue, the Court addressed the narrow issue of whether the State adequately proved its existence during the course of trial. And, although the Court did discuss Crim.R. 7(D), it did so only within the context of an amended indictment to include the controlled substance involved in the defendant's charge for drug trafficking. *See id.* at 478-479. Thompson's reliance on *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688 (determining that defendant is entitled to acquittal if the State fails to prove venue), and *State v. Vitale*, 96 Ohio App.3d 695 (8th Dist.1994) (determining that trial court should not have allowed amendment to indictment regarding the date of the charged offense), is similarly misplaced as neither case addresses whether a trial court may amend an indictment to include an allegation regarding venue. Consequently, Thompson has not provided any authority in support of his proposition that amending an indictment to include allegations regarding venue violates the right to a grand jury presentment and we consequently reject his argument. *See* App.R. 16(A)(7).

{¶15} Accordingly, we overrule Thompson's fourth assignment of error.

**Assignment of Error VI**

**The trial court abused its discretion and violated Stephen Thompson's due process rights and right to an impartial jury by imposing an arbitrary time limit on voir dire, and failing to excuse Juror 22.**

{¶16} In his sixth assignment of error, Thompson contends that the trial court erred by limiting the amount of time for voir dire.[1] We disagree.

{¶17} R.C. 2945.27 states that "[t]he judge of the trial court shall examine the prospective jurors under oath or upon affirmation as to their qualifications to serve as fair and impartial jurors, but he shall permit reasonable examination of such jurors by the prosecuting attorney and by the defendant or his counsel." *See also* Crim.R. 24(B). "The manner in which voir dire is to be conducted lies within the sound discretion of the trial [court]." *State v. Lorraine*, 66 Ohio St.3d 414, 418 (1993). This discretion includes the discretion to limit the length and scope of voir dire. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 119. In light of the broad discretion afforded trial courts in the handling of voir dire, we are unable to find reversible error in the examination of the venire "[a]bsent a clear abuse of discretion." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 44.

{¶18} The record does not reflect a clear abuse of discretion in the trial court's decision to limit the amount of time for voir dire. The trial court asked several questions regarding the potential bias of the venire before allowing each side 30 minutes to engage in further questioning. Consequently, the 30-minute time limitation for voir dire applied equally to both

---

[1] Although the language of Thompson's sixth assignment of error seems to challenge the trial court's failure to excuse Juror 22, his appellate brief only addresses this prospective juror in regard to the argument that the time limitation precluded Thompson from following up on some of Juror 22's statements during the course of initial questioning. As a result, we decline to address the non-excusal of Juror 22 and restrict our review to Thompson's time limit argument.

the State and Thompson, which removes any inference of prejudice to Thompson and we reject his argument on this point. *See State v. Harris*, 5th Dist. Stark No. 2003CA00287, 2004-Ohio-1557, ¶ 67 (determining that trial court's limitation of voir dire to 30 minutes per side was not an abuse of discretion in criminal trial for felonious assault and having a weapon under disability charges); *State v. Myers*, 87 Ohio App.3d 92, 99 (9th Dist.1993) (determining that trial court's limitation of voir dire to 30 minutes per side in highly-publicized animal cruelty case was not an abuse of discretion).

**{¶19}** Accordingly, we overrule Thompson's sixth assignment of error.

### Assignment of Error I

**The jury was denied expert testimony regarding the defendant's reaction time and expert testimony regarding the position of Trooper McClintock; as a result, the jury was deprived of evidence relevant to the issue of the defendant's intent as well as the credibility of various prosecution witnesses.**

**{¶20}** In his first assignment of error, Thompson contends that the trial court abused its discretion by precluding the defense from offering expert testimony regarding the police's actions during the incident and his ability to see Trooper McClintock when driving towards him. We disagree.

**{¶21}** Thompson attempted to call three expert witnesses in his defense: Thomas Tomasheski, Choya Hawn, and Henry Lipian. He argues that these expert witnesses' expected testimony would have created a reasonable doubt in regard to his felonious assault conviction for driving his vehicle towards Trooper McClintock. The trial court excluded Mr. Tomasheski's testimony as irrelevant and it excluded Mr. Lipian's and Mr. Hawn's testimony under Evid.R. 403(A). Accordingly, we consider the trial court's exclusion of Mr. Tomasheski's testimony separately from the exclusion of Mr. Hawn's and Mr. Lipian's testimony.

## A.     Mr. Tomasheski's Testimony

{¶22} Evid.R. 402 limits the admission of evidence to relevant evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Trial courts are "'vested with broad discretion'" in regard to the admission or exclusion of evidence, and "'an appellate court should not interfere [with the trial court's evidentiary ruling] absent a clear abuse of that discretion.'" *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 40, quoting *State v. Allen*, 73 Ohio St.3d 626, 633 (1995). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore*, 5 Ohio St.3d at 219. We may not substitute our own judgment for that of the trial court when applying the abuse of discretion standard. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶23} Here, Mr. Tomasheski's expert report essentially criticizes the handling of the incident by Sergeant Conwill and the various law enforcement agencies that responded to the scene. Mr. Tomasheski opines that Sergeant Conwill violated protocol by failing to stop Thompson's vehicle in the fast food restaurant's parking lot and by arranging for Trooper McClintock to get involved. Mr. Tomasheski also opines that "what I see in this investigation makes me sad" because the responding agencies disputed which agency was the proper one to handle the investigation.

{¶24} After reviewing Mr. Tomasheski's opinions and his report, we conclude that the trial court did not abuse its discretion by precluding Mr. Tomasheski from testifying. The report indicates that Mr. Tomasheski's testimony would have been irrelevant in regard to Thompson's felonious assault conviction. Sergeant Conwill's failure to stop Thompson's vehicle in the

restaurant's parking lot and his decision to involve Trooper McClintock in the traffic stop does not implicate whether Thompson knowingly drove his vehicle towards Trooper McClintock. *See State v. Belcher*, 2d Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 32 (determining that assault victims' failure to follow the controlling policies of their employers were irrelevant to the defendant's guilt and inadmissible). The responding agencies' subsequent dispute over the proper authority for the investigation is also irrelevant as it does nothing to illuminate whether Thompson's action of driving towards Trooper McClintock was more probable or less probable. *See State v. McCray*, 103 Ohio App.3d 109, 118 (9th Dist.1995) (determining that expert testimony regarding the defendant's posttraumatic stress disorder after observing murder was properly excluded since the evidence "would not offer a defense, justification or excuse" of the defendant's conduct). Consequently, we are unable to determine that the trial court erred by excluding Mr. Tomasheski's expert testimony.

### B. Mr. Hawn's and Mr. Lipian's Testimony

{¶25} Turning to Mr. Hawn's and Mr. Lipian's testimony, we note that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 403(A). We review the trial court's exclusion of this testimony under Evid.R. 403(A) for an abuse of discretion. *State v. Norris*, 9th Dist. Lorain No. 14CA010699, 2015-Ohio-5180, ¶ 20. In conducting our review of this decision, we are mindful that "the exclusion of evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." *Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 40.

**{¶26}** Mr. Hawn's expert report relates to the trajectory of the bullets fired by Trooper McClintock.[2] While the trajectory of the bullets may have some probative value regarding Trooper McClintock's position when he fired the bullets, Mr. Hawn's report focuses on Trooper McClintock's reactions as opposed to Thompson's actions, which were the exclusive focus of the indictment. As a result, Mr. Hawn's testimony would have confused the jurors in regard to the proper focus of this criminal matter, which was whether Thompson knowingly caused or attempted to cause physical harm to Trooper McClintock. *See State v. Rodriguez*, 12th Dist. Butler No. CA2007-09-222, 2009-Ohio-549, ¶ 34 (determining that the trial court properly excluded revised domestic relations forms in perjury trial because the forms did not address "the central issue in the case[, which] involved [the defendant]'s understanding of the forms she completed and whether she knowingly made false statements on such documents"). Consequently, we determine that the trial court did not abuse its discretion by excluding Mr. Hawn's expert testimony.

**{¶27}** We likewise conclude that the trial court did not abuse its discretion by excluding Mr. Lipian's testimony under Evid.R. 403(A). Mr. Lipian's expert report states his opinion that Thompson was unable to detect Trooper McClintock during the incident and that he could not make an "intentional decision" to drive towards Trooper McClintock. Mr. Lipian's opinion was partly based on evidence that Thompson was voluntarily intoxicated at the time of the incident. By couching his opinion in terms of Thompson's inability to make an "intentional decision," Mr.

---

[2] Both in the trial court and on appeal, the State argued that Mr. Hawn's testimony should be excluded because he could not qualify as an expert in ballistics. While the trial court noted that the State "has a point with regard to Mr. Hawn's qualifications," it based its decision to exclude Mr. Hawn's testimony on the basis of Evid.R. 403(A). As a result, we limit our review to the admissibility of the testimony under Evid.R. 403(A).

Lipian plainly used Thompson's voluntary intoxication as means to disprove that Thompson "knowingly" drove toward Trooper McClintock.

{¶28} But, evidence of voluntary intoxication cannot be used in such a way as former R.C. 2901.21(C) provides that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense."[3] *See also State v. Mitchell*, 8th Dist. Cuyahoga No. 102499, 2015-Ohio-4379, ¶ 19 ("Voluntary intoxication does not negate the 'knowing' state of mind required for a conviction of assault."). Allowing Mr. Lipian to testify regarding voluntary intoxication would confuse the jurors regarding the availability of this defense and it would unfairly prejudice the State since it would allow the impermissible defense to be presented to the jury. *See State v. Rupp*, 12th Dist. Butler No. CA2001-06-135, 2002 WL 517968, *6 (Apr. 8, 2002) (determining that the defendant's failure to comply with the order of a police officer was not against manifest weight of the evidence since the trial court could not consider evidence that the defendant was unable to "willfully elude" the police officer due to his voluntary intoxication). As a result, the trial court properly precluded Mr. Lipian from testifying due to "the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶29} In sum, the trial court did not abuse its discretion by precluding the testimony of Mr. Tomasheski, Mr. Hawn, and Mr. Lipian. Accordingly, we overrule Thompson's first assignment of error.

---

[3] 2014 Am.S.B. No. 361, effective March 23, 2015, renumbered this provision as R.C. 2901.21(E). While S.B. 361 did change the numbering of this provision, it did not amend the provision's language.

**Assignment of Error II**

**The trial court erroneously failed to instruct the jury that, in order to find the defendant guilty of the peace officer specifications alleged in Counts 1, 3, and 7, the jury was required to find that the victim was acting in the line of duty at the time of the assault.**

{¶30} In his second assignment of error, Thompson argues that the trial court erred by failing to instruct the jury that it had to find that the victim was acting in the line of duty at the time of the assault. We disagree.

{¶31} Trial courts must provide jury instructions that "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46. When assessing the trial court's jury instructions in this matter, we must be mindful of the relevant statutory language. Thompson was convicted of one count of felonious assault in violation of R.C. 2903.11(A)(2), which proscribes "knowingly * * * caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance." Pursuant to R.C. 2903.11(D)(1)(a), "[i]f the victim of violation of [R.C. 2903.11(A)] is a peace officer * * *, felonious assault is a felony of the first degree." Thompson was also convicted of two counts of assault in violation of R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" Under R.C. 2903.13(C)(5), assault is a felony of fourth degree "[i]f the victim of the offense is a peace officer * * * while in the performance of their official duties[.]"

{¶32} As to the charge of felonious assault, the trial court instructed the jurors that "before you can find [Thompson] guilty, you must find beyond a reasonable doubt that on [the date of the incident], in Wayne County, Ohio, [Thompson] knowingly caused or attempted to cause physical harm to Trooper Keith McClintock by means of a deadly weapon, specifically a motor vehicle." In regard to the assault charges, the trial court instructed the jurors as follows:

> Before you find [Thompson] guilty of assault, you must find beyond a reasonable doubt that on [the date of the incident, in Wayne County, Ohio, [Thompson] knowingly caused or attempted to cause physical harm to Trooper McClintock * * *. We have a second assault charge that you have to consider and before you can find [Thompson] guilty of this assault charge, you must find beyond a reasonable doubt that on [the date of the incident] in Wayne County, Ohio, [Thompson] knowingly caused or attempted to cause physical harm to Deputy Kirk Shelly[.]

In so instructing the jury, the trial court denied Thompson's request that the instruction include the following language: "you will separately decide beyond a reasonable doubt whether the victim of the offense was a peace officer, acting within his lawful jurisdiction and in the performance of his official duties."

{¶33} Even if the trial court's denial of this proposed jury instruction was improper, Thompson is only entitled to a reversal of his convictions if he can show that the denial prejudiced his substantial rights. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."); *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45 ("A trial court's failure to give a proposed jury instruction is only reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction."). Thompson attempts to carry this burden on appeal by pointing out that Sergeant Conwill was outside of the territorial jurisdiction of Wooster at the time of the charged assaults. However, this is entirely immaterial because none of Thompson's assault convictions related to conduct directed against Sergeant Conwill. Instead, the convictions related to actions that Thompson took against Trooper McClintock and Deputy Shelly. As a result, assuming, without deciding, that the denial of Thompson's proposed jury instruction was improper, he is still unable to demonstrate that the denial prejudiced his rights. Thus, we must reject Thompson's argument and determine that the trial court's denial of his proposed jury instruction did not amount to

reversible error. *See State v. Horne*, 9th Dist. Summit No. 24672, 2010-Ohio-350, ¶ 22 (determining that any error in the trial court's failure to give complicity instruction would not amount to reversible error because the defendant was convicted of the principal offense).

{¶34} Accordingly, we overrule Thompson's second assignment of error.

### Assignment of Error III

**The jury verdicts reflect a second-degree felony in Count 1 and first degree misdemeanors in Counts 3 and 7.**

{¶35} In his third assignment of error, Thompson asserts that the trial court erred by convicting him of one count of first-degree felonious assault and two counts of fourth-degree assault because the verdict forms fail to include findings that the victim was a peace officer acting in the performance of his duties. Because Thompson has failed to preserve this argument for appellate review, we decline to consider it on the merits.

{¶36} Thompson did not object to the verdict forms before the jury rendered its verdict. As a result, he has forfeited all but plain error on this point. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11; *see also State v. Napier*, 105 Ohio App.3d 713, 725 (1st Dist.1995) (determining that the defendant forfeited all but plain error in verdict forms where she "failed to object to the content of the verdict form before the jury began deliberating"). Although Thompson could still argue plain error, he has not done so. As a result, we decline to sua sponte fashion such an argument on his behalf and then address it. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 75 (declining to address merits of assignment of error relating to verdict forms since the defendant failed to argue plain error).

{¶37} Accordingly, we overrule Thompson's third assignment of error.

**Assignment of Error V**

**Stephen Thompson's conviction for felonious assault of Trooper McClintock in Count 1 is not supported by legally sufficient evidence as required by state and federal due process.**

{¶38} In his fifth assignment of error, Thompson contends that his conviction for felonious assault is not supported by sufficient evidence. We disagree.

{¶39} A sufficiency challenge to a criminal conviction presents a question of law that we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. Although we conduct de novo review when considering a sufficiency challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." (Internal quotation and citation omitted.) *State v. McMillen*, 9th Dist. Summit No. 27666, 2016-Ohio-370, ¶ 5.

{¶40} The first basis of Thompson's sufficiency challenge is that the State failed to offer sufficient evidence that he was aware that his conduct of driving head-on towards Trooper McClintock would probably result in an attempt to cause physical harm to Trooper McClintock. This argument implicates the statutory definitions for "knowingly" and "attempt." "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a

certain result or will probably be of a certain nature." Former R.C. 2901.22(B).[4] R.C. 2923.02(A), meanwhile, relevantly defines "attempt" as "[n]o person, * * * knowingly, and when * * * knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶41} After reviewing the record, we conclude that it contains sufficient evidence to establish that Thompson was aware his conduct could result in physical harm to Trooper McClintock. Although there is no evidence that Trooper McClintock spoke with Thompson before he drove the vehicle toward him, there is an indication that Thompson made eye contact with Sergeant Conwill before driving towards the two sets of headlights behind his vehicle in the driveway. Based on this, it is reasonable to infer that Thompson was aware of the presence of at least two officers as he drove away from the residence toward the road. Additionally, both Sergeant Conwill and Trooper McClintock testified that Thompson's vehicle drove directly toward Trooper McClintock while its headlights were on. This, along with evidence demonstrating that Thompson was able to maneuver his vehicle around the driveway and yard, indicates that Thompson was able to see the trooper as he accelerated and drove toward him. From these items of evidence, we determine that the State offered sufficient evidence to establish the required mental state of "knowingly." *See State v. Cash*, 6th Dist. Lucas No. L-03-1198, 2005-Ohio-1382, ¶ 7 (rejecting sufficiency challenge to felonious assault of a peace officer conviction where officers believed the vehicle was attempting to hit them and collision was only avoided because the officers took evasive action).

---

[4] S.B. 361 amended R.C. 2901.22's definition of culpable mental states, including the provision for "knowingly." Since the charged offenses in this matter occurred before S.B. 361's effective date, we rely on the previous versions of the statutory language.

{¶42} Thompson also challenges the sufficiency of the evidence regarding the deadly weapon element of R.C. 2903.11(A)(2). We have previously recognized, however, that "[a]n automobile is a deadly weapon when a driver attempts to run over someone." *State v. Jaynes*, 9th Dist. Summit No. 20937, 2002-Ohio-4527, ¶ 12. In light of Sergeant Conwill's and Trooper McClintock's testimony outlined above, we conclude that the jury could reasonably conclude that Thompson's action of driving directly toward Trooper McClintock reflected an attempt to run Trooper McClintock over. As a result, we conclude that the State offered sufficient evidence to prove the deadly weapon element of R.C. 2903.11(A)(2). *See id*. at ¶ 15 (rejecting sufficiency challenge to felonious assault of a peace officer conviction where the defendant "'drove directly at [the officers'] cruiser").

{¶43} Accordingly, we overrule Thompson's fifth assignment of error.

### Assignment of Error VII

**The trial court failed to make the necessary statutory findings to support the imposition of consecutive sentences.**

{¶44} In his seventh assignment of error, Thompson argues that the trial court erred in failing to sufficiently state and journalize the necessary statutory findings for the imposition of consecutive sentences. At oral argument, the State confessed error on this point and requested that the matter be remanded. We agree.

{¶45} R.C. 2953.08(G)(2) governs felony sentencing and it provides as follows:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may

take any action authorized by this division if it clearly and convincingly finds either of the following:

(a)     That the record does not support the sentencing court's findings under division (B) or (D) of [R.C.] 2929.13, division (B)(2)(e) or (C)(4) of [R.C.] 2929.14, or division (I) of [R.C. 2929.20], whichever, if any, is relevant;

(b)     That the sentence is otherwise contrary to law.

Based on the terms of this statute, the Supreme Court of Ohio has held that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *State v. Marcum*, Slip Opinion No. 2016-Ohio-1002, ¶ 23. "Clear and convincing evidence is that measure or degree of proof which is more certain than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Simply stated, the language in R.C. 2953.08(G)(2) establishes an 'extremely deferential standard of review' for 'the restriction is on the appellate court, not the trial judge.'" *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 8, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 21.

{¶46}  R.C. 2929.14(C)(4) states as follows:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)     The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentence, was under a sanction imposed pursuant to

[R.C.] 2929.16, 2929.17, or 2929.18 * * *, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the course of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Under the terms of the statute, trial courts must make three findings before imposing consecutive sentences:

(1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender;

(2) that consecutive sentences are not disproportionate to the seriousness of the offender['s] conduct and to the danger the offender poses to the public; and

(3) that one of the particular findings set forth in R.C. 2929.14(C)(4)(a)-(c) applies.

*State v. Giles*, 9th Dist. Summit No. 27339, 2015-Ohio-2132, ¶ 16.

**{¶47}** The Ohio Supreme Court has required trial courts to not only make the required R.C. 2929.14(C)(4) findings at the sentencing hearing, but to also "incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. Although the trial court must state the statutory findings at the sentencing hearing, it need not provide a "word-for-word recitation" of the statutory language, *id*. at ¶ 29, nor state any "magic or talismanic words" when imposing sentence, *State v. Bever*, 4th Dist. Washington No. 13CA21, 2014-Ohio-600, ¶ 17. Rather, "[a]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

**{¶48}** Neither the sentencing entry nor the trial judge's statements at the sentencing hearing reflect that the trial court engaged in the necessary R.C. 2929.14(C)(4) analysis or made the proper findings to support the imposition of consecutive sentences. During the sentencing hearing, the trial judge stated that "the felony sentences will be consecutive" without stating any of the findings outlined above. The sentencing entry similarly fails to address R.C. 2929.14(C)(4) and merely states that "[the felony sentences] are consecutive with each other." As a result, we must reverse the trial court's imposition of consecutive sentences and remand the matter for it to properly consider R.C. 2929.14(C)(4) and make the necessary findings. *See State v. Brooks*, 9th Dist. Summit Nos. 26437, 26352, 2013-Ohio-2169, ¶ 15 (reversing trial court's imposition of consecutive sentences where "the sentencing transcript is devoid of the level of detail that would allow this Court to conclude that the trial court engaged in the appropriate analysis").

**{¶49}** Accordingly, we sustain Thompson's seventh assignment of error.

III.

**{¶50}** Having overruled Thompson's first through sixth assignments of error, we affirm the judgment of the Wayne County Court of Common Pleas convicting him of felonious assault, assault, OVI, and obstructing official business. However, having sustained Thompson's seventh assignment of error, we reverse the judgment insofar as it imposes consecutive sentences for his felonious assault and assault convictions. Consequently, we remand this matter for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

MOORE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MARK B. MAREIN and STEVEN L. BRADLEY, Attorneys at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.